UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| KEVIN BRENNAN, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil No. 12-cv-11519-LTS |
| SENTIENT JET, LLC, | ) ) ) | |
| Defendant. | ) ) | |

MEMORANDUM AND ORDER ON
<u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

May 21, 2013

SOROKIN, C.M.J.

The plaintiffs have sued their former employer, alleging they are owed overtime pay, sales commissions, and bonuses. They filed suit four months after their employer instituted a related action against them in state court for breaching a noncompetition agreement when they accepted jobs with a competitor. Now, the defendant seeks summary judgment, arguing that the state-court action (in which the defendant prevailed) bars the claims the plaintiffs assert here. Because each of the plaintiffs' claims is precluded either by the doctrine of collateral estoppel or based on the Massachusetts state-court rule regarding compulsory counterclaims, the defendant's motion is ALLOWED.

I.  <u>BACKGROUND</u>

The defendant, Sentient Jet, LLC ("Sentient"), is in the business of arranging charter jet services. Doc. No. 41 at ¶ 1. The plaintiffs, Kevin Brennan and Darryn Mackenzie, were employed by Sentient, first as Sales Directors, and later as Vice Presidents. <u>Id.</u> at ¶ 2. In 2008,

both plaintiffs signed "Confidentiality, Noncompetition, Nonsolicitation, Non Disclosure Agreements" ("the Noncompetition Agreements") which, among other things, restricted their solicitation of Sentient's customers and vendors during the year following their resignation. Id. at ¶¶ 3-4; see Doc. No. 35-1 at 29-32, 34-37.  According to the opening paragraph of the Noncompetition Agreements, the plaintiffs signed them "[i]n consideration of the[ir] employment . . . ***and the compensation paid to [them] by [Sentient]***."  Doc. No. 35-1 at 29, 34 (emphasis added).

The plaintiffs resigned from Sentient on February 3, 2012 and immediately joined Apollo Jets, Sentient's direct competitor.  Doc. No. 41 at ¶¶ 6-7.

Sentient sued the plaintiffs in Massachusetts state court on March 12, 2012 ("the State-Court Action"), asserting claims including: breach of the Noncompetition Agreements, misappropriation of trade secrets, and intentional interference with business relations.[1]  Id. at ¶¶ 9-11.  The plaintiffs asserted no counterclaims.  Id. at ¶ 13.  As part of their defense against Sentient's claims, the plaintiffs argued the Noncompetition Agreements were void based on Sentient's alleged failure to compensate them as required by the terms of their employment relationship.  Id. at ¶ 14.  They pursued this issue throughout the State-Court Action as follows:

- In their answer to the complaint: "Sentient's claims are barred in whole or in part because it breached the terms of the underlying employment relationship." Id. at ¶ 12.

- In opposing Sentient's motion for a preliminary injunction: "Sentient has failed to pay [the plaintiffs] certain commissions and other monies that Sentient owed [them] at the time of their resignation," which amounted to $12,000 and $5,000 for Brennan and

---

[1]Sentient also sued a third employee, who is not a party to this federal action.

Mackenzie, respectively, id. at ¶¶ 16-18; this failure "constitutes a material breach of the [Noncompetition] Agreement[s] and excuses [the plaintiffs'] performance thereunder," id. at ¶ 16.

- At Mackenzie's deposition: "They still owe me money," including between $3,500 and $3,800 in commissions, id. at ¶¶ 19-20, and payment "for many, many hours of overtime," id. at ¶¶ 21-23.

- At Brennan's deposition: "[T]hey owed me some commission on flights that I booked before I left," as well as bonuses, an overdue $25,000 raise, and overtime. Id. at ¶¶ 24-28.

- In their discovery requests, the plaintiffs sought information relating to unpaid commissions, their "employment terms, duties and responsibilities," and their compensation. Id. at ¶¶ 29-30.

- In response to an interrogatory requesting the basis for Brennan's claim that "Sentient owes [him] money," Brennan listed $5,000 in bonuses and $8,100 in commissions. Id. at ¶¶ 31-32.

- In response to a similar interrogatory, Mackenzie described correspondence he had with Sentient's Human Resources ("HR") Director regarding commissions, $3,573.86 of which he claimed remained outstanding. Id. at ¶¶ 33-34.

- Both plaintiffs denied requests by Sentient that they admit they had received all commissions and wages to which they were entitled. Id. at ¶¶ 35-42.

- In their pretrial memorandum: "[Sentient] itself breached the [noncompetition] agreements . . . by changing the terms and conditions of [the plaintiffs'] employment and

not delivering on promises made throughout their time with the company." Id. at ¶ 49.

- At trial, Brennan testified about his job duties, extended work hours, a raise he was promised but never received, and unpaid bonuses. Id. at ¶¶ 51-54.

- Mackenzie likewise testified about his job duties and extended work hours, as well as "over $3,000 [in commissions] which they haven't paid." Id. at ¶¶ 55-58.

- Also at trial, the plaintiffs had an opportunity to cross-examine Sentient's HR Director about her testimony that the plaintiffs had received all compensation they were due. See id. at ¶¶ 59-61.

- In his closing argument, the plaintiffs' counsel argued that the "one thing [Sentient] had to" do, "under the terms of the [noncompetition] agreements" and "under the terms of the employment relationship" it had with the plaintiffs, was "it had to pay [them]." Id. at ¶ 62. He further argued that Sentient "didn't even honor that," by failing to pay commissions and bonuses that it owed to the plaintiffs. Id.

- Based on a request made by the plaintiffs, the trial judge instructed the jury as follows with respect to Sentient's breach of contract claim:

    > The third element of proof is that the plaintiff itself complied or, in other words, did not breach the agreement. In order to recover for breach of contract, the plaintiff must show that it complied with the contract, in other words, did not breach that contract itself. ***Here the plaintiff promised to provide a job for the defendants at a certain level of pay. If the plaintiff failed to pay the defendant according to the terms of the contract, then it cannot recover against . . . that defendant for breach of contract.***[2]

    Id. at ¶ 64 (emphasis added).

---

[2] In this excerpt, "the plaintiff" refers to Sentient, and "the defendants" refer to Brennan and Mackenzie.

On December 19, 2012, the jury returned a verdict in the State-Court Action in favor of Sentient on its breach of contract claim, as well as misappropriation of trade secrets and intentional interference with business relations. Id. at ¶ 66.

While the State-Court Action was pending, in July 2012, the plaintiffs filed their own complaint against Sentient.[3] Id. at ¶ 43; Doc. No. 1. Counts I and II of the plaintiffs' Amended Complaint allege Sentient violated federal and state statutes governing payment of overtime wages. See Doc. No. 32 at ¶¶ 33-40 (alleging violations of chapter 151, § 1A of the Massachusetts General Laws, and the Fair Labor Standards Act, 29 U.S.C. § 207). These causes of action arise from the plaintiffs' claims that their positions required them to work from home on nights and weekends for an average of twenty hours each week, in addition to working forty hours per week at the office. Id. at ¶ 6. Mackenzie and Brennan allege they are owed approximately $155,000 and $100,000, respectively, in unpaid overtime wages. Id. at ¶¶ 10, 13.[4]

In Count III, the plaintiffs allege a violation of the Massachusetts Wage & Hour Act based on Sentient's alleged failure to pay them certain commissions. Id. at ¶¶ 41-43. Specifically, Brennan claims he is owed $8,100 in commissions, and Mackenzie seeks $3,556. Id. at ¶¶ 16-17. Count IV alleges breach of contract on behalf of Brennan only, for $5,000 in bonuses he claims he earned in January 2012 and an iPad he claims he should have received

---

[3] The action was originally filed in state court, but Sentient removed it to this Court on August 16, 2012. Doc. No. 1. The parties consented to proceed before the undersigned Magistrate Judge in January 2013. Doc. No. 19.

[4] The $100,000 figure for Brennan is the sum of the $40,000 he claims for the period from June 2010 through February 2011, and half of the $120,000 "double damages" he claims for the period from June 2009 through June 2010. Both plaintiffs assert the unpaid overtime figures are subject to doubling and/or tripling under the relevant state and federal statutes.

based on his sales during the fourth quarter of 2011.  Id. at ¶¶ 25, 30-31, 44-46.

Sentient seeks summary judgment in its favor on each of the plaintiffs' claims.  Doc. No. 33.  It argues the plaintiffs are estopped from pursuing Counts III and IV, as they turn on issues previously litigated and decided in Sentient's favor in the State-Court Action.  Doc. No. 34 at 5-9.  As to Counts I and II, Sentient contends Rule 13(a) of the Massachusetts Rules of Civil Procedure required the plaintiffs to assert any claims for overtime wages as counterclaims in the State-Court Action.  Id. at 9-16.

The plaintiffs have opposed Sentient's motion, suggesting neither doctrine applies because issues regarding their compensation were not the focus of the Noncompetition Agreements (or of the State-Court Action, which they claim was limited to the explicit terms of those agreements).  Doc. Nos. 39, 40.  Sentient has filed a short reply brief, Doc. No. 43, and the parties appeared for a motion hearing on May 20, 2013, Doc. No. 44.  Upon careful consideration of the parties' briefs and oral arguments, and in light of the legal standards discussed below, the Court concludes that Sentient is entitled to judgment as a matter of law.

II.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Once a party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); accord Barbour v. Dynamics Research Corp., 63 F.3d 32, 37 (1st Cir. 1995).  The Court is "obliged to view the record in the light most

favorable to the nonmoving party, and to draw all reasonable inferences in the nonmoving party's favor." LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993). Even so, the Court must ignore "conclusory allegations, improbable inferences, and unsupported speculation." Sullivan v. City of Springfield, 561 F.3d 7, 14 (1st Cir. 2009).

"There must be sufficient evidence favoring the nonmoving party for a [factfinder] to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50. "Trialworthiness requires not only a 'genuine' issue but also an issue that involves a 'material' fact." Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995). A material fact is one which has the "potential to affect the outcome of the suit under applicable law." Nereida-Gonzalez v. Tirado-Delgado, 990 F.2d 701, 703 (1st Cir. 1993). For a factual dispute to be "genuine," the "evidence relevant to the issue, viewed in the light most flattering to the party opposing the motion, must be sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side." Nat'l Amusements, Inc., 43 F.3d at 735 (internal citation omitted).

Here, there are very few, if any, facts which the parties truly dispute, and none of the arguably disputed facts are material to the legal issues presented by Sentient's motion. See generally Doc. No. 41 (reflecting the plaintiffs admit nearly all of Sentient's factual statements, disagreeing only about the legal effect of the jury's verdict on the plaintiffs' claims here, and on immaterial questions like whether the plaintiffs "took with them confidential information" when they left Sentient). Indeed, most of the necessary facts are established by the record from the State-Court Action. The only genuine disagreement between the parties is how the relevant law

applies to those facts. Such questions are appropriately resolved by the Court on summary judgment.

III.   DISCUSSION

   A.   Collateral Estoppel

Sentient first argues that the plaintiffs' claims are precluded to the extent they raise "issues of whether Sentient owed [the plaintiffs] additional employment compensation" – specifically, commissions and bonuses – because the plaintiffs raised and fully litigated those issues in the State-Court Action. Doc. No. 34 at 5-9. The plaintiffs disagree, urging that the issues presented in the State-Court Action were not identical to their claims here, and any determinations regarding their compensation were not essential to the previous judgment. Doc. No. 40 at 2-5. The plaintiffs are wrong.

The doctrine of collateral estoppel, or issue preclusion, "prevents relitigation of an issue determined in an earlier action where the same issue arises in a later action, based on a different claim, between the same parties or their privies." Heacock v. Heacock, 520 N.E.2d 151, 152 n.2 (Mass. 1988); accord Kobrin v. Bd. of Registration in Med., 832 N.E.2d 628, 634 (Mass. 2005).[5] Before invoking the doctrine, a court must determine whether the following factors are present: "(1) there was a final judgment on the merits in the prior adjudication; (2) the party against whom preclusion is asserted was a party (or in privity with a party) to the prior adjudication; and (3) the issue in the prior adjudication was identical to the issue in the current adjudication."

---

[5]The preclusive effect of a prior judgment is determined based on the law of the jurisdiction in which the judgment was rendered. In re Sonus Networks, Inc., S'holder Derivative Litig., 499 F.3d 47, 56 (1st Cir. 2007). As such, the parties agree that Massachusetts law controls here.

Tuper v. N. Adams Ambulance Serv., Inc., 697 N.E.2d 983, 985 (Mass. 1998); accord Kobrin, 832 N.E.2d at 634.

In addition, Massachusetts courts require that the issue must have been "essential to" the previous judgment. Kobrin, 832 N.E.2d at 634; Tuper, 697 N.E.2d at 985; accord Jarosz v. Palmer, 766 N.E.2d 482, 487-88 (Mass. 2002) (applying a three-pronged test for issue preclusion, requiring that the issue was actually litigated, essential to the judgment, and decided with finality). To be "essential to" the previous judgment, the issue "must have [had] a bearing on the outcome of the case," and must "at least [have been] treated as essential to the prior case by the court and the party to be bound." Jarosz, 766 N.E.2d at 489. Unlike the separate doctrine of claim preclusion, which requires "identity of the cause of action," collateral estoppel prevents relitigation of issues previously litigated and decided, "even in the context of a suit based on an entirely different claim." In re Sonus Network, 499 F.3d at 56.

Two central questions are presented here.[6] First, are the issues raised in this action regarding the plaintiffs' commissions and bonuses identical to issues litigated in the State-Court Action? Second, if so, were those issues essential to the jury's verdict in the State-Court Action? A careful review of the record reveals that the answer to both of these questions is "yes."

The plaintiffs suggest the State-Court Action could not have involved "identical" issues because Sentient's claims there arose from the Noncompetition Agreements, and the plaintiffs'

---

[6]It is undisputed that the parties here also were parties to the State-Court Action. And although the plaintiffs initially questioned the finality of the state court's judgment because they had reserved their appeal rights, Doc. No. 40 at 5, they recently signed and filed notices with the state court in which they waived their rights to appeal the judgments against them with respect to both liability and damages, Doc. No. 43-1. The state court's judgment, therefore, is final for all relevant purposes.

current claims involve "an entirely separate agreement" defining the terms of their compensation by Sentient.[7]  Doc. No. 40 at 3.  The plaintiffs accuse Sentient of "attempt[ing] to impute a wage contract into the Noncompetition Agreement[s]," which they claim are silent on the issue of compensation.  Id.  Neither the language of the Noncompetition Agreements nor the position the plaintiffs explicitly took throughout the State-Court Action supports this view.

Under the terms of the Noncompetition Agreements, the plaintiffs made a series of promises that restricted their own behavior in exchange for Sentient's "employment of [the plaintiffs] and the compensation paid to [them] by [Sentient]."  Doc. No. 35-1 at 29.  In other words, Sentient's "primary obligation under the [Noncompetition Agreements] was to pay [the plaintiffs] for the work [they] did."  Dialogo, LLC v. Bauza, 456 F. Supp. 2d 219, 225 (D. Mass. 2006).  This is precisely the position the plaintiffs took in the State-Court Action, where their defense was based, in part, on a claim that Sentient had rendered the Noncompetition Agreements void by failing to pay the plaintiffs commissions and bonuses they were owed.  See, e.g., Doc. No. 41 at ¶ 62.  Indeed, for the duration of the State-Court Action, it was the plaintiffs, not Sentient, who "impute[d] a wage contract into the Noncompetition Agreement[s]."  Doc. No. 40 at 3.  The state court accepted the plaintiffs' view of Sentient's obligations under the

---

[7]The plaintiffs also vaguely contend that collateral estoppel is inappropriate where "the central issue[s]" of the two actions, although perhaps "similar" and "related," are not the same. Doc. No. 40 at 2-3.  They reiterated this position during the oral argument, suggesting questions of compensation were only a "small issue," and not a "primary defense," during the State-Court Action.  Such arguments appear to misunderstand the distinction between claim preclusion and issue preclusion.  See In re Sonus Networks, 499 F.3d at 56 (explaining the difference between the doctrines).  Issue preclusion operates to bar relitigation of any issue, including questions that are simply components of larger claims or defenses, if the requirements set forth above are met. None of those criteria require consideration of the "central issues" or "primary defenses" of the actions.

agreements, instructing the jury that Sentient had promised, as part of the Noncompetition Agreements, "to provide a job for the [plaintiffs] at a certain level of pay," and that Sentient could not recover against the plaintiffs for breach of the agreements if the jury concluded Sentient had failed to pay the plaintiffs as promised. Doc. No. 41 at ¶ 64. Under these circumstances, the plaintiffs cannot save their claims in this action regarding commissions and bonuses by ignoring their representations in the State-Court Action and suggesting separate contracts are at issue here. As the plaintiffs appropriately advocated in state court, questions regarding their compensation are not only related, but identical, to questions regarding Sentient's obligations under the Noncompetition Agreements.

Second, the plaintiffs assert the issues related to their compensation were not "essential" to the judgment in the State-Court Action because "[t]he record is void of any determination being made" with respect to such issues. Doc. No. 40 at 4. This suggestion ignores the fact that the plaintiffs themselves "treated [the compensation issues] as essential to the prior case." See Jarosz, 766 N.E.2d at 489. So did the state court, by directly and unambiguously instructing the jury – at the plaintiffs' request – that Sentient could not prevail on its breach of contract claim if it had not paid the plaintiffs their due compensation. Doc. No. 41 at ¶ 64. "No one claims that this instruction [wa]s an incorrect statement of law, nor is there the slightest reason to believe that the jury did not scrupulously adhere to it." Rio Mar Assocs., LP v. UHS of P.R., Inc., 522 F.3d 159, 163 (1st Cir. 2008). Pursuant to this instruction, an assessment of the plaintiffs' claims regarding unpaid bonuses and commissions was essential to the jury's determination that the plaintiffs had breached the Noncompetition Agreements. Doc. No. 41 at ¶ 66.

Thus, all elements of collateral estoppel required by Massachusetts law are satisfied here,

and the plaintiffs are precluded from pursuing Counts III and IV of their Amended Complaint.

    B.    <u>Compulsory Counterclaims</u>

Sentient asserts that Massachusetts law required the plaintiffs to assert their overtime wage claims as counterclaims in the State-Court Action, and that by failing to do so the plaintiffs forfeited their only opportunity to pursue such claims. Doc. No. 34 at 9-16. According to the plaintiffs, their overtime claims are not based on the same set of facts as, nor are they logically related to, the claims litigated in the State-Court Action. Doc. No. 40 at 5-7. Once again, the plaintiffs' view of the prior proceedings is too narrow.

A plaintiff may not maintain an action "where the claims asserted should have been brought as a compulsory counterclaim in an earlier action." <u>Soni v. Bos. Med. Ctr. Corp.</u>, 683 F. Supp. 2d 74, 92 n.6 (D. Mass. 2009) (internal quotations and citation omitted). In Massachusetts, counterclaims are compulsory if they satisfy the criteria set forth in Rule 13(a) of the Massachusetts Rules of Civil Procedure.[8] That rule provides, in relevant part:

> A pleading shall state as a counterclaim any claim for relief . . . which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not either require for its adjudication the presence of third parties over whom the court cannot acquire jurisdiction or constitute an action required by law to be brought in a [different] county or judicial district.

Mass. R. Civ. P. 13(a).[9] The compulsory counterclaim rule "embodies the principle that '[a]ll

---

[8] Whether a claim was a compulsory counterclaim in an earlier state-court action is determined based on that state's law. <u>Soni</u>, 683 F. Supp. 2d at 92 n.6. The parties agree that Massachusetts law applies here.

[9] It is undisputed that the plaintiffs knew of the claims asserted in their Amended Complaint by the time they answered Sentient's complaint and injunction motion in the State-Court Action. There is likewise no question that the state court had jurisdiction over the parties necessary to litigate the plaintiffs' claims, as well as the claims themselves. The only question

claims arising out of the same facts should be heard, where possible, in the same proceeding.'" Keystone Freight Corp. v. Bartlett Consol., Inc., 930 N.E.2d 744, 748 (Mass. App. Ct. 2010) (quoting Columbia Chiropractic Grp., Inc. v. Trust Ins. Co., 712 N.E.2d 93, 96 (Mass. 1999)).

In assessing whether a claim "arises out of the transaction or occurrence" that was the subject of previous litigation, Massachusetts courts are cognizant of Rule 13(a)'s purpose "to effectuate the settlement in one proceeding of controversies so closely connected as appropriately to be combined in one trial in order to prevent duplication of testimony, to avoid unnecessary expense . . . , and to expedite the adjudication of suits." Nat'l Lumber Co. v. Canton Inst. for Sav., 776 N.E.2d 1241, 1243 (Mass. App. Ct. 2002) (internal quotation marks omitted); see Tapalian v. Town of Seekonk, 188 F. Supp. 2d 136, 139 (D. Mass. 2002) (noting the scope of the rule "is liberally interpreted" and involves "judicial discretion" that may be guided by considerations of efficiency); Wainwright Bank & Trust Co. v. Rawan, No. 970016B, 1998 WL 1270651, at *2 (Mass. Super. Ct. June 2, 1998) (finding counterclaims compulsory where the "essential facts of the various claims are so logically connected that judicial economy and fairness require that all the issues be resolved in one lawsuit"). Claims are "logically related if separate trials on each of the parties' respective claims would involve a substantial duplication of effort and time by the parties and the courts." Wainwright Bank, 1998 WL 1270651, at *2.

The plaintiffs echo their view that the two actions involve different contracts, one of which governed the parties' actions before the plaintiffs resigned, while the others (i.e., the Noncompetition Agreements) governed their behavior thereafter. This view is no more

---

remaining, then, is whether the claims now pending arose from "the transaction or occurrence" that was the subject of Sentient's claims in the State-Court Action. See Doc. No. 40 at 5-7.

persuasive in the context of a compulsory counterclaim analysis than it was with respect to collateral estoppel. Questions related to the hours the plaintiffs worked and whether they were entitled to overtime wages are logically related to the compensation questions explored in the State-Court Action and incorporated into the Noncompetition Agreements. Moreover, the plaintiffs touched on such issues – in particular, their claims that they were required to work more than forty hours each week, and to be on call twenty-four hours each day – throughout the State-Court Action. See Doc. No. 41 at ¶¶ 17-18, 22, 27, 52, 56.

In a similar case from Ohio, which both parties view as instructive on this issue, an employee's federal claims regarding unpaid overtime were deemed logically related to his employer's claims in a previous state-court action alleging the employee had been overpaid and also had failed to repay loans granted to him by the company during his employment. McConnell v. Applied Performance Tech., No. C2-01-1273, 2002 WL 32882707, at *7 (S.D. Ohio Dec. 11, 2002), aff'd, 98 F. App'x 397 (6th Cir. 2004).[10] In part, the decision in McConnell resulted from the court's conclusion that both sets of claims arose from the "employment relationship" between the parties, notwithstanding the fact that the conduct at issue in each action spanned different time periods. Id. The court also noted that any award of overtime pay to the employee should have been raised in the state-court action because it "would have been credited against" the damages claimed by the employer. Id.

The McConnell court's reasoning is persuasive, and its finding that separate trials of the

---

[10]McConnell applied Ohio law, but the language of the relevant Ohio Rule of Civil Procedure mimics the parallel federal rule, which is "virtually identical, in relevant respects" to Rule 13(a) in Massachusetts. See McMenimen v. Pietropaolo, No. 05-cv-12229-GAO, 2006 WL 1240483, at *1 n.2 (D. Mass. May 4, 2006) (comparing the Massachusetts and Federal rules); McConnell, 2002 WL 32882707, at *5 (quoting the Ohio rule).

parties' claims "would subject the parties and the Court to substantial duplication of time and effort" applies with equal force here. Id. The plaintiffs' overtime claims arise from facts related to – and, in some instances, facts specifically explored in – the State-Court Action, based on the affirmative defenses raised there by the plaintiffs. See Yentile v. Howland, 525 N.E.2d 689, 690 (Mass. App. Ct. 1988) (finding a "party cannot raise a claim in [a subsequent c]ourt which was available as a defense in [a prior] action"). Had the issue been raised as a counterclaim in the State-Court Action, any unpaid overtime due to the plaintiffs could have been credited against Sentient's damages (or, pursuant to the plaintiffs' state-court defense, may have eliminated their liability altogether). As such, pursuant to Massachusetts law, the plaintiffs' remaining claims were compulsory counterclaims that should have been asserted in the State-Court Action.

Accordingly, the plaintiffs have forfeited their overtime wage claims (Counts I and II) by failing to raise them in response to Sentient's state-court complaint.

## IV. CONCLUSION

For the foregoing reasons, all four of the plaintiffs' claims fail as a matter of law. Sentient's motion is ALLOWED, and an appropriate judgment will enter separately.

SO ORDERED.

/s/ Leo T. Sorokin
Leo T. Sorokin
Chief U.S. Magistrate Judge